**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
R. ALEXANDER ACOSTA, Secretary of Labor,
United States Department of Labor;

                              Plaintiff,

                   - against -

DRF HOSPITALITY MANAGEMENT LLC
d/b/a BARTO RESTAURANT and DONALD FINLEY,
individually,

                           Defendants.
-------------------------------------------------------------X

                                     **REPORT AND**
                                     **RECOMMENDATION**

                                   CV 18-346 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

    **I.**    PRELIMINARY STATEMENT

        Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor

(the "Plaintiff" or "the Secretary"), commenced this action against Defendants DRF Hospitality

Management LLC d/b/a Barto Restaurant ("DRF Hospitality" or "Barto Restaurant") and Donald

Finley ("Finley"), (collectively "Defendants") to enforce the recordkeeping and overtime pay

provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. See generally*

Compl. [DE 1]. The Secretary seeks to recover back wages and liquidated damages for

Defendants' employees and to enjoin future acts and practices which violate the FLSA. *See*

*generally id*.

        Upon the Defendants' failure to answer or otherwise respond to this action, the Clerk of

the Court noted Defendants' default. *See* DE 9; DE 11. Thereafter, Plaintiff moved for entry of a

default judgment. *See* Plaintiff's Notice of Motion for Default Judgment ("Pl.'s Mot.") [DE 14].

The Honorable Denis R. Hurley referred the motion to this Court for a Report and Recommendation.  *See* June 1, 2018 Referral Order.

   For the reasons which follow, this Court respectfully recommends to Judge Hurley that the Secretary's motion be GRANTED.  The Court further recommends that damages be awarded consistent with this Report and Recommendation but that entry of judgment be deferred to permit the Secretary to provide the information noted as to post-judgment interest and costs within 21 days.

**II.   BACKGROUND**

**A.   Pertinent Facts**

   The following facts are derived from the Complaint and are accepted as true for purposes of this motion.  *See* Compl.  The Court has also reviewed (1) the Declaration of Susan B. Jacobs, Senior Trial Attorney for the U.S. Department of Labor ("Jacobs Decl.") [DE 14-1], annexed to Pl.'s Mot as Ex. 1; and (2) the Declaration of Nicole Stahl, Investigator for the U.S. Department of Labor ("Stahl Decl.") [DE 14-2], annexed to the Pl.'s Mot. as Ex. 2.  Facts relating to the procedural posture of the case are derived from the docket history.

**1.   *The Defendants' Employment Policies and Practices***

   DRF Hospitality is a limited liability corporation organized under the laws of the state of New York, with its principal place of business in Roslyn, New York.  Compl. ¶ 4.  The corporation does business as Barto Restaurant.  At all relevant times, Defendant Finley owned, actively managed, and controlled Barto Restaurant, regulating the employment of all Barto Restaurant employees.  *Id.* ¶¶ 6, 10.  Finley exercised control over the terms and conditions of Barto Restaurant employees in that he had the power to: (1) hire and fire employees; (2) supervise and control employee work schedules; (3) supervise and control conditions of

employment; (4) determine rates and methods of pay; and (5) maintain employment records. *Id.* ¶¶ 6.  Finley also supervised and hired Barto Restaurant general managers. *Id.* ¶ 7.  As such, Plaintiff alleges that Defendants are both employers pursuant to the FLSA, 29 U.S.C. § 203(d) and its related regulations such as 29 C.F.R. § 791.2. *Id.* ¶¶ 5-6.

The Secretary also alleges that at all times relevant to this action, Defendants were, vis-à-vis Barto Restaurant, an "enterprise engaged in commerce" within the meaning of the FLSA. *Id.* ¶¶ 11-12.  Specifically, Plaintiff maintains that Defendants (1) employed bartenders, servers, bussers, cooks, dishwashers/porters and expos/food runners — including Bobby Ahearn, Larizza Chinchilla, John/Jacob Dominguez ("Dominguez"), Carlos Espinoza, Freddy Espinoza, Milton Espinoza, Scott Hansen ("Hansen"), Sebastian Hernandez, Alex Lez, Javier Lopez/Martinez, Hugo Nunez, Refuglio Olvera, Gustavo Pulgarin, Jose Reyes, Julio Saul, and Paul Tutino ("Tutino") — in the activities of an enterprise engaged in commerce or in the production of goods for commerce in that these employees handled, sold, or otherwise worked on goods or materials moved in, or produced for, commerce, and (2) grossed [annually] an amount not less than $500,000 in volume of sales or business done. *Id.*

The Complaint further alleges that Defendants knowingly and willfully operated Barto Restaurant without paying employees proper overtime compensation when they worked more than 40 hours in a workweek.  Instead, the Secretary alleges that Defendans were paying employees at their regular hourly rate regardless of the number of hours worked. *Id.* ¶¶ 19-20.  The Secretary also charges that Defendants failed to keep and/or preserve adequate and accurate employee time and pay records. *Id.* ¶¶ 23-27.

### 2. *FLSA Investigation and Specific Findings*

On December 14, 2016, Investigator Nicole Stahl ("Investigator Stahl" or "Stahl") of the

United States Department of Labor, Wage and Hour Division ("WHD") was assigned to conduct

an investigation of DRF Hospitality to determine whether Defendants were in compliance with

the FLSA in their operation of Barto Restaurant.  *See* Stahl Decl. ¶ 5.  During the course of her

investigation, Stahl obtained limited documents from DRF Hospitality and conducted interviews

with several Barto Restaurant employees.  *See generally* Stahl Decl.  Based on Stahl's

investigation, the WHD determined that Defendants violated the FLSA by (1) failing to

compensate employees with time and a half pay who worked more than 40 hours in a workweek

from at least June 9, 2016 through at least March 31, 2017 (*id.* ¶ 31); and (2) failing to make,

keep, and/or preserve adequate and accurate records (*id.* ¶ 32).  The details of Stahl's

investigation and findings are outlined below.

Investigator Stahl visited Barto Restaurant at 1024 Northern Boulevard, Rosyln, New

York on December 21, 2016 and left an appointment letter with Michael Lloyd, who identified

himself as the restaurant manager.  *Id.* ¶ 6.[1]  The appointment letter informed DRF Hospitality

that the WHD was investigating the company to determine whether it was in compliance with the

FLSA.  *Id.* ¶ 7.  The letter also requested the production of various documents by September 28,

2016 including, *inter alia*, employee lists, wage information, payroll documents, weekly time

cards and/or timesheets, and cash disbursement records for the period running from December

20, 2014 through December 20, 2016.  *Id.* ¶¶ 6-10 and Ex. 1.  Despite assurances from Michael

Lloyd that responsive documents would be forthcoming, none were produced by December 28,

---

[1]      A copy of the appointment letter is annexed to Investigator Stahl's Declaration as
Exhibit 1.  *See* Stahl Decl., Ex. 1.

2016. *Id.* ¶¶ 8-9. Consequently, an administrative subpoena *duces tecum* was served on DRF Hospitality on January 10, 2017, requesting the production of documents by January 25, 2017. *Id.* ¶¶ 9-10. The subpoena is annexed to the Stahl Decl. as Ex. 2. On January 24, 2018, Investigator Stahl received a telephone call from Lawrence Rader, an attorney, who stated that he represented DRF Hospitality and was asking for more time to produce the requested documents. *Id.* ¶ 11. Investigator Stahl agreed and extended the subpoena compliance date to January 27, 2017. *Id.* She also advised Attorney Rader that she wanted to conduct an initial conference with Defendant Finely and a telephone conference was set for January 31, 2017. *Id.*

Prior to the conference, on January 27, 2017, Jordan Sinclair, an attorney from Mr. Rader's office, provided a limited document production — by email — including a list of employee names, addresses, job titles and compensation information, as well as a Paychex Payroll Journal for the period of January 7-20, 2017. *Id.* ¶¶ 12-14. A copy of the employee list is annexed to the Stahl Decl. as Ex. 3 and a copy of the Paychex Payroll Journal is annexed as Ex. 4. According to Stahl, "[n]o other documents requested in the subpoena were produced." *Id.* ¶ 12. On January 31, 2017, as scheduled, Investigator Stahl conducted an initial conference by telephone with Mr. Rader for approximately fifteen minutes while they waited for Defendant Finley to call in. *Id.* ¶ 13. Mr. Finley never called. *Id.* Investigator Stahl informed Mr. Rader that she still needed to speak with Finley and Attorney Rader said he would try to get Finley on the phone and call back. *Id.* After waiting 20 minutes, Stahl called Rader again. Rader would not give Stahl a definite answer concerning when she could speak to Finley and he asked for "a few days" to "figure things out." *Id.*

Following DRF Hospitality's minimal production and Finley's failure to meaningfully respond to the investigation, Stahl referred the matter to Elena Goldstein, an attorney with the

Office of the Solicitor, who sent a letter to Attorney Rader's office cautioning counsel that if DRF Hospitality did not comply with the subpoena by February 7, 2017, action may be taken in federal court to enforce the subpoena. *Id.* ¶ 14.  On February 24, 2017, DRF Hospitality produced additional documents, including Employee Time Card and Job Detail records for February 13-26, 2017 and Employee Earning records for two bartenders for the period of June 24, 2016-December 23, 2016.  *Id.* ¶ 15.[2]

Thereafter, DRF Hospitality retained new counsel, Paul Millus, Esq.  *Id*. ¶ 16. Investigator Stahl held a final conference with Attorney Millus on April 18, 2017.  *Id.*.  Elaine Guzzo, Assistant District Director of the Long Island District office of the WHD, also attended that conference.  Defendant Finley did not.  *Id*.  Stahl informed Attorney Millus that the WHD had determined the Defendants violated both the overtime and record-keeping requirements of the FLSA by paying employees straight-time for overtime hours worked and by failing to keep accurate records of hours worked and wages paid.  *Id.*  Attorney Millus requested additional time to gather evidence to show that employees were properly paid.  *Id.*

On April 28, 2017, Attorney Millus sent Investigator Stahl a letter claiming that Defendant Finley denied most of the WHD's allegations concerning DRF Hospitality's failure to comply with the FLSA and asserted that DRF Hospitality could not afford to pay back wages. *Id.* ¶ 17.  Thereafter, on May 3, 2017, in an apparent attempt to demonstrate that employees were properly paid, DRF Hospitality produced self-created Excel spreadsheets for 14 bi-weekly pay periods from July 6, 2016 to January 2, 2017, purporting to show employee hours worked and wages paid.  *Id.* ¶ 18.  A copy of the spreadsheet dated December 19, 2016 is annexed to the

---

[2]    The additional documents, annexed to the Stahl Decl. as Exs. 6 and 7, indicate that Barto Restaurant employees worked more than 40 hours per week during the represented time periods and were not paid sufficient overtime wages.  Stahl Decl. ¶ 15 and Exs. 6, 7

Stahl Decl. as Ex. 8.  Significantly, Stahl could not confirm the accuracy of the information contained in the Excel spreadsheets because DRF Hospitality did not produce any underlying employee time or pay records demonstrating the origin of the data reflected in the spreadsheets. *Id.*[3]

On May 9, 2017, Stahl and Assistance District Director Guzzo held a "second final conference" with Attorney Millus and at which Finley again did not appear.  *Id.* ¶ 20.  The WHD presented Attorney Millus with updated back wage computations, in response to which Attorney Millus requested time to discuss the matter with Defendant Finley.  *Id.*  On May 26, 2017, Finley submitted a letter requesting a three-year payment plan to pay the overtime wages owed. *Id.* ¶ 21.  Attorney Millus was advised that in order to move forward with the request for a long payment plan, Defendant Finley would have to submit supporting financial documentation.  *Id.* On July 31, 2017, a third final conference was held, which Finley attended, along with Attorney Millus.  *Id.* ¶ 22.  During the conference, Finley asked that his proposed three-year payment plan be implemented at which time Finley was again informed that he would need to submit financial records relating to his personal and business finances. *Id.*  No such financial documents were produced other than Finley's 2015 Federal Tax Return.  *Id.*

Notwithstanding DRF Hospitality and Finley's failure to meaningfully comply with Investigator Stahl's document demands, Stahl was able to interview several Barto Restaurant employees, including Scott Hansen, who worked as a bartender, and John/Jacob Dominguez, who worked as a food runner/expediter.  *See id.* ¶¶ 23, 25-26; *see also* May 29, 2018 Declaration of Scott Hansen ("Hansen Decl.") and May 21, 2017 Statement of John Dominguez

---

[3]       It is worth noting that, according to Investigator Stahl, "some of the spreadsheets showed that employees worked more than 40 hours a week and were only paid their regular hourly rate for all hours worked."  Stahl Decl. ¶ 19 and Ex. 8.

("Dominguez Stat."), attached to the Stahl Decl. as Exs. 9 and 10.  Based on these interviews,

Stahl learned that Barto Restaurant employees were paid straight time for all hours worked,

regardless of how many hours they worked over 40 in one workweek (*see id.* ¶¶ 24, 30, Hansen

Decl. ¶¶ 8, 13, 14, 16, and Dominguez Stat.); that most employees typically worked between 50

to 60 hours per week (*see* Stahl Decl. ¶¶ 24, 28); and that most employees were paid every two

weeks entirely in cash (*see id.* ¶ 28).[4]  In addition, Stahl learned that servers, hosts, bartenders,

and busboys recorded their starting and stopping work times every workday using a

computerized time recording system in Barto Restaurant.  *See* Stahl Decl. ¶ 23.  Despite WHD's

document demands, none of these records were ever produced by Defendants.  *Id.* ¶¶ 7, 10, 23.

　　　　To calculate back overtime wages due Barto Restaurant employees, Investigator Stahl

(1) gave Defendants full credit for paying employees straight-time for all hours worked; (2)

reconstructed each employee's hourly wage rate and average number of hours worked for each

workweek during the investigative period; and (3) calculated back wages owed to each employee

based on Defendants' failure to pay the statutory half-time premium for each hour worked over

40 hours per week.  *Id.* ¶¶ 33-35.  To reconstruct the average amount of hours employees worked

each workweek during the covered period, Investigator Stahl relied on employee interviews and

the kitchen staff calendar previously obtained for December 12-18, 2016.  *Id.* ¶¶ 40-41.  For the

---

[4]　　　According to Hansen, who bartended at Barto Restaurant between 50 and 60 hours per
week, he was paid $7.50 per hour by check for the first 40 hours worked and then $3.00 per hour
in cash for each hour worked over 40.  *See* Stahl Decl. ¶ 25 and Ex. 9 ¶¶ 6-8.  Hansen reported
that only he and two other employees were paid [partially] by check and that all other employees
at Barto Restaurant were paid entirely in cash.  Stahl Decl. ¶ 27 and Hansen Decl. ¶ 9.  Hansen
stated that servers were paid $3.00 per hour (plus tips) for all hours worked (Stahl Decl. ¶ 28 and
Hansen Decl. ¶ 16), which is corroborated by Dominguez's statement (Dominguez Stat.).
Hansen provided Investigator Stahl with a copy of a Barto Restaurant kitchen staff schedule for
the week of December 12, 2016, which indicates that kitchen staff worked approximately 44 to
65 hours during that workweek.  Stahl Decl. ¶ 29.

nine kitchen workers, Stahl used the hours detailed in the December 12-18, 2016 calendar.  *Id.*
¶ 41.  For Hansen, Stahl used an average of 55 hours per week since he indicated that he
typically worked between 50 and 60 hours per week.  *Id.* ¶ 42.  For Tutino, who also worked as
a bartender, Stahl used an average of 45 hours per week since Hansen indicated that Tutino
typically worked between 40 and 50 hours per week.  *Id.* ¶ 43.  As for the servers, including
Dominguez, Stahl used an average of 55 hours per week based on information provided by
Dominguez, Hansen, and other employees that servers typically worked between 50 and 60
hours per week.  *Id.* ¶¶ 44-45.

Stahl also reconstructed most of the employees' hourly rates.  *Id.* ¶ 46.  During the
investigative period, the federal minimum wage was $7.25 per hour while the New York State
minimum wage was $9.00 per hour.  *Id.*  ¶ 36; *compare* 29 U.S.C.A. § 206 *with* N.Y. Lab. Law
§ 652 (McKinney).  The federal cash wage required to be paid to tipped employees was $2.13
per hour and the New York State cash wage required to be paid to tipped employees was $7.50
per hour.  Stahl Decl. ¶ 37.  Pursuant to 29 C.F.R. § 778.5, the WHD enforces the higher New
York State cash wage requirement.  *Id.*  For the nine kitchen workers, Stahl presumed, to the
benefit of the Defendants, that the kitchen workers were paid at least the applicable New York
minimum wage and used that wage to compute additional half time.  *Id.* ¶ 50.  Based on
information provided by Hansen concerning his pay and the pay of bartenders generally, Stahl
used a $7.50 per hour rate for both Hansen and Tutino.  *Id.* ¶ 48.  For Dominguez, Stahl used the
applicable New York minimum wage of either $9.00 or $10.00 per hour to compute additional
half-time due to servers for hours worked over 40 in one week since Dominguez and Hansen
reported that servers were paid $3.00 per hour plus tips.  *Id.* ¶ 49.  Based on her calculations,

Stahl determined that Defendants owe a total of $77,610.75 in back wages and an equal amount in liquidated damages. *Id.* ¶ 52.

### B.      Procedural History

Plaintiff filed this action against Defendants on January 18, 2018. *See* DE 1. On January 26, 2018, Plaintiff filed proof of service as to DRF; Plaintiff filed proof of service as to Finley on February 23, 2018. DE 6; DE 7.[5] Defendants did not answer or otherwise respond to the Complaint and Plaintiffs filed a Request for a Certificate of Default as to each defendant. *See* DE 8, 10. Thereafter, the Clerk of the Court noted the default of each Defendant on the record. *See* DE 9, 11. On April 5, 2018, Judge Hurley ordered that any motion for default judgment had to be filed on or before May 31, 2018. *See* April 5, 2018 Electronic Order.

The Secretary filed his formal motion for entry of default judgment on May 31, 2018. *See* DE 14. The motion was served on Defendants via first-class mail the same day. *See* Certificate of Service annexed to Pl.'s Mot. To date, Defendants have not responded or otherwise appeared. Judge Hurley referred the instant motion for default judgment to this Court for a Report and Recommendation as to whether Plaintiff has demonstrated that the "allegations in the Complaint establish the defendants' liability such that the motion for default judgment should be granted." *See* June 1, 2018 Referral Order.

---

[5]      According to the Secretary's filings, (1) service was effected upon DRF by serving a copy of the Summons and Complaint upon Michael Lloyd, Barto Restaurant's manager, who is designated by law to accept service of process on behalf of DRF (*see* Summons and Proof of Service [DE 6]); and (2) Finley was served by nail and mail service at his usual place of abode and by service upon a person of suitable age and discretion at his actual place of employment/business (*see* Summons and Affidavits of Service [DE 7]). For a detailed discussion of the sufficiency of service of process, see Part IV(A)(1) below.

III.   **S**TANDARD OF **R**EVIEW

Federal Rule of Civil Procedure 55 establishes a two-step procedure by which a party

may obtain a default judgment.  *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y.*

*Pension Fund v. Moulton Masonry & Const.*, LLC, 779 F.3d 182, 185–86 (2d Cir. 2015) (citing

FRCP 55); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (same); *see also*

*City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *N.Y. v. Green*, 420

F.3d 99, 104 (2d Cir. 2005).  First, pursuant to Rule 55(a), if a party has failed to plead or

otherwise defend, the Clerk of the Court must enter a certificate of default by making a notation

on the record.  Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the party still fails to

appear or move to set aside the default, then the court may enter a default judgment.

Fed. R. Civ. P. 55(b).

The trial court has "sound discretion" to grant or deny a motion for a default judgment.

*Enron Oil*, 10 F.3d at 95.  This discretion is not absolute — the Second Circuit has an "oft-stated

preference" for judging disputes on the merits.  *Id.*  In fact, the Second Circuit has cautioned

courts that granting a default judgment is an "extreme sanction" that is to be used as a tool of last

resort.  *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981).  Accordingly, the district court must

carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the

responsibility of giving litigants a chance to be heard on the other.  *See Enron Oil*, 10 F.3d at 96.

With these dual goals of conserving judicial resources and affording due process, doubts should

generally be resolved in favor of the defaulting party.  *See id.*

On a motion for default judgment is, the defendant is deemed to have admitted all of the

well-pleaded factual allegations in the plaintiff's complaint, except for claims relating to

damages.  *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Bricklayers*, 779 F.3d at 189–90; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see generally Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014) (under both a motion to dismiss and a motion for default, the plaintiff must proffer well-pleaded allegations).  Once the defendant is found to be in default, the plaintiff bears the burden of showing that he is entitled to recovery.  *See Danser v. Bagir Int'l*, 571 Fed.Appx. 54, 55 (2d Cir. 2014); *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 Fed.Appx. 54, 58 (2d Cir. 2013); *Ferrara v. PJF Trucking LLC*, No. 13 Civ. 7191, 2014 WL 4725494, at *5 (E.D.N.Y. Sept. 22, 2014); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 Civ. 4631, 2007 WL 4326920, at *7 (E.D.N.Y. Dec. 7, 2007).

A plaintiff must prove that the compensation he or she seeks relates "to the damages that naturally flow from the injuries pleaded."  *Greyhound Exhibitgroup,* 973 F.2d at 159.  Generally, the court may make this determination through an evidentiary hearing or proceeding.  Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.,* 122 F.R.D. 151, 156 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2d Cir.1989).  A court is not required to conduct a hearing if there is a basis for the damages specified in the default judgment.  *See* Fed.R.Civ.P. 55(b)(2); *Cement & Concrete Workers,* 699 F.3d at 234 ("Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'" (quoting *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993))); *Finkel v. Romanowicz,* 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court."); *see also Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974) (stating that while a default judgment constitutes an admission of liability, the amount of

damages must be proven, unless the amount is liquidated or can be calculated). Therefore, a court may rely on "detailed affidavits and documentary evidence," in addition to the plaintiff's complaint, to determine the sufficiency of a claim in the context of a default. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997); *see Bricklayers,* 779 F.3d at 189–90; *Cement \*30 & Concrete Workers,* 699 F.3d at 234; *Tamarin,* 13 F.3d at 54. The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999); *see Cement & Concrete Workers,* 699 F.3d at 232. The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp.*, 653 F.2d at 65.

In the context of an FLSA action, where an employer has failed to keep accurate or adequate records as required by the statute, "an employee (or the Secretary on behalf of a group of employees) may submit evidence from which violations of the Act and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp.* 121 F.3d 58, 66 (2d Cir. 1993) (internal quotation marks and citation omitted). "[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.,* 08–CV–6071, 2009 WL 289653, at \*3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted by* 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). *See also Chao v. Vidtape, Inc.,* 196 F.Supp.2d 281, 293–94 (E.D.N.Y. 2002); *Zhao v. East Harlem Laundromat, Inc.,* 07–CV–201, 2010 WL 4628294, at \*6 (S.D.N.Y. Oct. 8, 2010).

## IV.  DISCUSSION

### A.  Factors Relevant to Default Judgment

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default."

13

*Krevat v. Burgers to GO, Inc.*, No. 12-CV-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).  "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. CV 12–6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-CV02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

### 1.    *Willfullness*

"When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful." *Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Constr. Corp.*, No. 12-CV-3877, 2013 WL 618738 at *3 (E.D.N.Y. Jan. 28, 2013) (citation omitted). Thus, as to the first factor, the failure of Defendants to respond to the Complaint under the present facts sufficiently demonstrates willfulness. *Eastern Sav. Bank, FSB v. Beach*, No. 13-CV-341, 2014 WL 923151, at *5 (E.D.N.Y Feb. 12, 2014), *adopted by* 2014 WL 923151 (E.D.N.Y. Mar. 10, 2014); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).

Here, service was effected upon DRF Hospitality on January 23, 2018, when Mauricio Agudelo, an investigator with the WHD, personally delivered a copy of the Summons and

14

Complaint to Michael Lloyd, General Manager of Barto Restaurant and DRF Hospitality's agent for service of process.  *See* Jacobs Decl. ¶ 4; Summons and Proof of Service [DE 6].  According to Plaintiff, Finley was served by nail and mail service on February 6, 2018 when Michael Delacore, a licensed process server, affixed a true copy of the Summons and Complaint to the door of Finley's residence at 39 Overlook Road, Locust Valley, New York 11560 and mailed a separate copy of the Summons and Complaint by prepaid first-class mail to Finley at the same address.  *See* Jacobs Decl. ¶ 5; Returned Summons and Affidavit of Service at p.1 [DE 7].  Upon close examination of Plaintiff's Affidavits of Service, it appears to the Court that on February 13, 2018, Vincent Mannetta, a licensed process server, personally delivered a copy of the Summons and Complaint to Michael Lloyd, who accepted service on behalf of Finley, at Barto Restaurant. Mannetta also mailed a separate copy of the Summons and Complaint by prepaid first-class mail to the same location.  *See* Affidavit of Service at p. 2 [DE 7].  Although Plaintiff has not provided the Court with an analysis of the sufficiency of the "nail and mail service" described above, the Court finds the service upon Finley was adequate for the reasons set forth below.

Under Rule 4(e)(1), an individual within a judicial district of the United States may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. (4)(e)(1).  "Under New York law, service of process is governed by CPLR § 308."  *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 260–61 (E.D.N.Y. 2011).  Pursuant to CPLR § 308, service of process can be made by (1) delivering the summons to the person to be served, or (2) delivering the summons "to a person of suitable age and discretion at the actual place of business . . . or usual place of abode of the person to be served and by either mailing the summons to the . . . person['s] . . . last known residence . . . or by mailing the summons by first class mail to the

15

person['s] . . . actual place of employment."  CPLR § 308(1)-(2).  If service of process is to be

made upon a person of suitable age and discretion at the place of business of the person to be

served, the mailing of the summons and complaint must be made in an envelope bearing the

legend "personal and confidential" and must not indicate that the communication is from an

attorney or concerns an action against the person to be served.  CPLR § 308(2).  Section 308(2)

requires that the mailing be effected within 20 days of personal delivery and that proof of service

be filed within 20 days of delivery, or mailing, whichever is later.  *Id.*  The statute further

requires that the proof of service "identify the person of suitable age and discretion and state the

date, time and place of service." *Id.*

Here, service of process was effected upon Defendant Finley in accordance with CPLR

§ 308(2).  The Affidavit of Service states that on February 13, 2018 at 7 p.m., Vincent Mannetta,

a licensed process server, personally delivered a copy of the Summons and Complaint to Michael

Lloyd, the manager of Barto Restaurant.  *See* Summons and Affidavit of Service at p. 2 [DE 7].

The pertinent Affidavit of Service further states that Michael Lloyd is a person of suitable age

and discretion and that Michael Lloyd indicated, at the time of delivery, that he is authorized to

accept service and that Barto Restaurant is Finley's actual place of business/employment.  *Id.*

The Affidavit of Service describes Michael Lloyd as a white male, bald, without glasses, age 26-

35 years old, between 5'4" and 5'8" in height, and between 161 pounds and 200 pounds in

weight.  *Id.*  The Affidavit provides that on February 15, 2018, within 20 days of delivery,

Vincent Mannetta mailed a copy of the Summons and Complaint to Finley at Barto Restaurant

by first-class mail in a properly addressed envelope bearing the words "Personal and

Confidential" and that the envelope did not indicate that the communication was from an

attorney or concerned an action against Finley.  *Id.*  Based on the Court's review of the docket, it

is clear that the pertinent Affidavit of Service was timely filed on ECF on February 23, 2018, within 20 days of delivery and mailing.

With respect to nail and mail service, CPLR § 308(4) authorizes this alternative method of service only where service under paragraphs one and two of CPLR § 308 cannot be made with "due diligence."  CPLR § 308(4).  Although Plaintiff indicates that Finley was effectively served by nail and mail service on February 16, 2018, the Court need not consider or analyze such service since Finley was properly served under CPLR § 308(2).[6]

In addition to being served with the Summons and Complaint, Defendants were also served with the instant motion and accompanying exhibits.  *See* Pl.'s Mot., Certificate of Service [DE 14-4].  However, to date, Defendants have not responded, appeared or requested additional time to do so.  Therefore, the Court finds that Defendants' failure to respond to the Complaint was willful.

### 2.   *Prejudice*

The Court next considers whether the non-defaulting party would be prejudiced if the motion for entry of default judgment were to be denied.  Here, denying the motion for default judgment motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06–CV–14226, 2008 WL 5560868, at * 2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders*, 2003 WL 1960584, at * 3).  If a default judgment is not granted, he Secretary will have no alternative legal redress to recover the damages sought here.  Therefore, the prejudice factor has been satisfied.

---

[6]       Under normal circumstances, the Court would analyze the propriety of the nail and mail service and determine whether Plaintiff satisfied the statute's due diligence requirement before resorting to the nail and mail method.

### 3.     *Meritorious Defense*

The final factor the Court considers is whether Defendants have a meritorious defense. A defense will be considered meritorious when it is "good at law" and gives the factfinder a determination to make. *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).  A meritorious defense requires a presentation of facts which, if proven during trial, would establish a complete defense. *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d. Cir 1998).  The Court cannot determine whether a defendant has a meritorious defense when the defendant fails to answer the Complaint. *Empire State Carpenters Welfare v. Darken Architectural Wood*, 2012 WL 194075, at \*3 (E.D.N.Y. 2012).  In such circumstances, granting a default judgment is favored. *See id*. Here, Defendants failed to provide an answer to the Complaint.  Therefore, granting a default judgment is favored and the facts set forth within the Complaint are admitted.  Nevertheless, Plaintiff's allegations do not necessarily demonstrate the validity of its claims.  Plaintiff must show that these unanswered allegations establish Defendants' liability for each claim. *See Said v. SBS Elecs., Inc.*, 2010 WL 1265186, at \*2 (E.D.N.Y. 2010).

Plaintiff's Complaint asserts two violations of the FLSA: (1) failure to pay overtime wages; and (2) failure to make, keep, and/or preserve adequate and accurate records. *See* Compl. ¶¶ 31-35. Plaintiff further asserts that Defendants' violations of the FLSA were willful. *Id.* ¶¶16, 28-30, 32, 35.  With respect to the first claim, Plaintiff alleges that Defendants violated the FLSA's overtime provision, which states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).   The Complaint specifically alleges that at all relevant times many of Defendants' employees worked between 44 and 65

18

hours in a workweek and were compensated at their regular hourly rate of pay, regardless of the number of hours worked in excess of 40 hours.  *See* Compl. ¶¶ 17-20, 31-33.  With respect to the second claim, Plaintiff contends that Defendants violated the FLSA's recordkeeping requirements which impose a duty on an employer to make, keep, and preserve records of the persons employed and of their wages, hours, and other information relating to their employment. *See* 29 U.S.C. § 211(c).  Plaintiff asserts that the Defendants did not comply with their recordkeeping duties.  *See* Compl. ¶¶ 21-27, 34-35.  Specifically, the Defendants did not keep and/or preserve adequate and accurate records, including most of their employees' names and address, daily starting and stopping times, actual daily and weekly hours worked, regular hourly rates of pay and total regular overtime wages paid each pay period.  *Id.* ¶¶ 24-27; *see also* Stahl Decl. ¶¶ 15, 18, 23, 32.

### a.   Liability Under the FLSA

 "To establish a claim under the FLSA, plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, No. 16-CV-451, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated sub nom. Saucedo v. On the Spot Audio Corp*, No. 16-CV-451, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018).

### b.   Defendants Subject to the FLSA

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or otherwise

> working on goods or materials that have been moved in or produced
> for commerce by any person; and ... [whose] annual gross volume
> of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)-(ii).  An employer is subject to both the minimum wage and

overtime provisions of the FLSA if either: (1) its employees are "engaged in commerce" or (2)

the employer is an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207; *see Padilla v.*

*Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009).  The statute defines "commerce" as

"trade, commerce, transportation, transmission, or communication among the several States or

between any State and any place outside thereof."  29 U.S.C. § 203(b).  These two methods of

establishing FLSA coverage are known as "individual coverage" and "enterprise coverage,"

respectively.  *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

Plaintiff alleges that at all relevant times, Barto Restaurant had employees engaged in

commerce or in the production of goods for commerce and had annual gross revenues of at least

$500,000.  *See* Compl. ¶¶ 12-13.  Plaintiff has therefore sufficiently pleaded that Barto

Restaurant is subject to the FLSA.  *See Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp.

3d 19, 33 (E.D.N.Y. Mar. 19, 2015) (finding a complaint which simply restated the statutory

definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to

operate  a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not

exclusively come from New York State"); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d

114, 121 (E.D.N.Y. 2011) ("even local business activities fall within the reach of the FLSA when

an enterprise employs workers who handle goods or materials that have moved or been produced

in interstate commerce") (internal quotations and citation omitted).

The Complaint also asserts that during the relevant time period, Finley owned, actively

managed, and controlled Barto Restaurant and regulated the employment of all Barto Restaurant

employees.  *See* Compl. ¶¶ 6, 10.  Specifically, Plaintiff claims that Finley exercised control over the terms and conditions of Barto Restaurant employees in that he had the power to: (1) hire and fire employees; (2) supervise and control employee work schedules; (3) supervise and control conditions of employment; (4) determine rates and methods of pay; and (5) maintain employment records.  *Id.* ¶¶ 6.  Plaintiff also alleges that Finley supervised and hired Barto Restaurant general managers.  *Id.* ¶ 7.  Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g).  An individual may be liable as an employer under the FLSA so long as he exercises "operational control" over the employee in question.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  Individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff.  *See Moon v. Kwon*, 248 F.Supp.2d, 201, 237 (S.D.N.Y. 2002).

Here, Plaintiff has adequately alleged the elements necessary to establish that Defendants were, at all relevant times, employers with respect to Barto Restaurant workers within the meaning of the FLSA.  Thus, Defendants are jointly and severally liable for damages.  *See Saucedo*, 2016 WL 8376837, at *5.

### c. Barto Restaurant Employees Covered by the FLSA

Under the FLSA, an "employee" is anyone "employed by an employer."  29 U.S.C. § 203(e)(1).  "Insofar as Plaintiff's Complaint alleges that Defendants employed Plaintiffs within this statutory meaning, '[i]t follows . . . that for purposes of this default, [they] qualif[y] as . . . "employee[s]" under the FLSA.'"  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F.Supp. 3d

19, 32 (E.D.N.Y. 2015) (quoting *Garcia v. Badyna,* No. 13 Civ. 4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014)).  The Court notes that "[t]he FLSA grants the Secretary of Labor the right 'to bring an action by or on behalf of any employee' to recover unpaid minimum wages or overtime compensation." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 394 (E.D.N.Y. 2013) (quoting 29 U.S.C. § 216(c)).  Here, the Secretary brings this action on behalf of Barto Restaurant workers.  Because Plaintiff has alleged that Barto Restaurant workers were employees of the Defendants, and because these allegations are plausible and sufficiently supported, Plaintiff has satisfied the second element of its FLSA claims.

### d.    No Exemptions

"[T]he issue of whether [an employee's responsibilities] render the employee exempt from the FLSA's overtime provision is a question of law." *Fermin* 93 F.Supp.3d at 32 (quoting *McBeth v. Gabrielli Truck Sales, Ltd.,* 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (internal quotation marks omitted)).  The Court is satisfied that there are no exemptions under the FLSA in these circumstances based on the nature of the employment relationship between the Barto Restaurant workers and Defendants as well as the nature of the actual work the employees performed.

Based on the foregoing analysis, Plaintiff has sufficiently pleaded the necessary elements of its claims under the FLSA.

### B.    Damages

Having determined that the Complaint establishes liability against Defendants for failure to comply with the FLSA's overtime pay and recordkeeping requirements, the Court must next assess the damages to which Plaintiff is entitled on its claims.  Although Rule 55 presumes all factual allegations as admitted for purposes of determining liability, no such deference is given

when calculating damages. *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp*, 973 F.2d 155, 158 (2d Cir. 1992). "Instead, damages must have an evidentiary basis such that they can be "ascertained with reasonable certainty." *LG Capital Funding, LLC v. Worthington Energy,* No. 16-CV-6288, 2018 WL 1370266 at *4 (E.D.N.Y. Feb. 20, 2018) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Constrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

### 1.    *Burden of Proof*

"Under the FLSA, an employee-plaintiff generally has the burden of proving that he performed work for which he was not properly compensated." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *12 (E.D.N.Y. Sept. 22, 2017) (internal quotation marks and citation omitted). However, as noted by the Supreme Court, "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687. As such, a defaulting defendant deprives a plaintiff "of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." *Martinez*, 2017 WL 5033650, at *12 (citation omitted). "Courts in this Circuit have concluded that where a defendant-employer defaults, a plaintiff may meet this burden of proof 'by relying on his recollection alone.'" *Id.* (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). To conclude otherwise would cause defendants in FLSA cases to benefit from failing to answer or comply with discovery obligations. *See Mack v. No Parking Today, Inc*., 16 CV 3986, 2019 WL 490137, at *8 (E.D.N.Y. Jan. 9, 2019); *Boyke v. Superior Credit Corp.*, No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006).

Here, Defendants have failed to answer or otherwise defend this action. Significantly, one of Plaintiff's central claims in the instant action is that Defendants failed to keep adequate records.  As such, the only evidence available to support Plaintiffs' claims are the statements of Barto Employees, materials obtained by Investigator Stahl, and the limited documentation provided by Defendants during the course of the WHD investigation.  Since Defendants have not appeared to rebut the claims contained in Plaintiff's allegations, the Court bases its recommendation with respect to damages on the evidence provided by Plaintiff concerning the hours the employees worked and the wages paid to them, and draws all reasonable inferences from such evidence.

### 2.     *Wages Owed and Liquidated Damages*

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, [and/] or their unpaid overtime compensation" and "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b) (2008).  Significantly, the employer bears the burden of establishing that liquidated damages should not be awarded. *Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir.1997).  However, because Defendants have not answered nor responded to the instant motion, they have not carried their burden and, therefore, liquidated damages are appropriate.  *Martinez,* 2017 WL 5033650, at *22 ("Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiffs; thus, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA.")

Here, Plaintiff seeks $77,610.75 in unpaid overtime wages for Defendants' employees and the same amount in liquidated damages for a total of $155,221.50 plus post-judgment interest.  As detailed above, in calculating the alleged damages, Investigator Stahl gave

24

Defendants full credit for paying employees straight time for all hours worked, reconstructed

each employee's hourly wage rate and average number of hours worked each workweek -- based

on the recollections of employees interviewed and materials obtained during the investigation --

and calculated unpaid overtime wages at one and one-half times their regular rate of pay.

Investigator Stahl's calculus is consistent with that employed in relevant case law.  *See, e.g.*,

*Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 126 (E.D.N.Y. 2011) (calculating

damages owed based on the representations in Plaintiffs' affidavits, the declarations of Plaintiffs'

counsel and the supporting documentation attached to those declarations); *Searson v. Concord*

*Mortgage Corp.*, 07-cv-3909, 2018 WL 1175065, at *6 (E.D.N.Y. Jan. 29, 2018) ("Where there

has been a default in a case alleging wage violations, the plaintiff's recollection and estimates of

the hours worked are presumed correct. . . ."); *Castellanos v. Deli Casagrande Corp.*, No. CV

11-245, 2013 WL 1207058, at *4 (E.D.N.Y. Mar. 7, 2013) (finding that where defendants had

not rebutted plaintiff's recollection of the hours worked, the court would accept plaintiff's

recollection based on his testimony during the hearing and calculate the damages accordingly).

Generally, unpaid overtime wages are calculated by multiplying the New York minimum wage

rate or the FLSA minimum wage rate, whichever is higher, by 0.5 to determine the additional

amount owed per hour over 40 hours worked.  *Id.*  That amount is then multiplied by the number

of hours of overtime worked per week to yield a sum of overtime pay owed per week.  *Id.*  The

amounts for each week are then aggregated to determine the total amount of overtime damages

owed.  *Id.*  In light of Defendants' default here, the recollections and submissions of the

Defendants' employees detailing hours worked and rates of pay are presumed accurate.  Further,

based on the Court's review, they are consistent with the limited documents available in this

case, including those provided by the Secretary.  *See* Stahl Decl. Exs. 3, 4, 6, 7.  Therefore, the

Court accepts the variables used by Investigator Stahl in calculating overtime wages due.

The Court has reviewed Investigator Stahl's calculations and has confirmed those

numbers.  As shown in the Plaintiff's submissions attached to the instant motion, the following

chart details the back wages and liquidated damages due to each employee based on

reconstructed hours and applicable rates of pay:

| Employee | Back Wages Due | Liquidated Damages Due | Total Due |
|---|---|---|---|
| Bobby Ahearn | $9,862.50 | $9,862.50 | $19,725.00 |
| Larizza Chinchilla | $1,759.50 | $1,759.50 | $3,519.00 |
| John Dominguez | $315.00 | $315.00 | $630.00 |
| Carlos Espinoza | $4,398.75 | $4,398.75 | $8,797.50 |
| Freddy Espinoza | $13,327.50 | $13,327.50 | $26,655.00 |
| Scott Hansen | $2,107.50 | $2,107.50 | $4,215.00 |
| Sebastian Hernandez | $977.50 | $977.50 | $1,955.00 |
| Alex Lez | $13,327.50 | $13,327.50 | $26,655.00 |
| Javier Lopez/Martinez | $1,981.00 | $1,981.00 | $3,962.00 |
| Hugo Nunez | $13,327.50 | $13,327.50 | $26,655.00 |
| Refuglio Olvera | $3,030.25 | $3,030.25 | $6,060.50 |
| Gustavo Pulgrain | $2,737.00 | $2,737.00 | $5,474.00 |
| Jose Reyes | $4,887.50 | $4,887.50 | $9,775.00 |
| Julio Saul | $4,594.25 | $4,594.25 | $9,188.50 |
| Paul Tutino | $977.50 | $977.50 | $1,955.00 |
| **Totals** | **$77,610.75** | **$77,610.75** | **$155,221.50** |

*See* Jacobs Decl. ¶ 19; Stahl Decl. Ex. 12.   True and accurate copies of the back wages

computation spreadsheets for each affected employee are annexed to Investigator Stahl's

Declaration as Exhibit 12.

The Court is satisfied that an inquest is not required since the wages and liquidated

damages can be readily ascertained by mathematical computation.  *See Flaks v. Koegel*, 504 F.2d

702, 707 (2d Cir. 2974); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973

F.2d 155, 158 (2d Cir. 1992).  Courts in this District routinely award FLSA damages by solely

evaluating and analyzing affidavits and other documents without an evidentiary hearing.  *See,*

*e.g., Tapia v. Be  Optical LLC,* No. 16-CV-5555, 2018 WL 2078478 (E.D.N.Y. Feb 13, 2018);

*Rios v. BBQ Chicken Don Alex, Inc.*, No. 16-CV-6630, 2018 WL 264512 (E.D.N.Y. Jan 2,

2018); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650 (E.D.N.Y.

Sept. 22, 2017); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835 at * 3

(E.D.N.Y. Mar 12, 2014).   Given the precise nature of the calculations utilized here, the Court is

satisfied with the damages analysis contained in Plaintiff's submissions.

The Secretary also seeks an injunction restraining the Defendants from future violations

of the FLSA.  29 U.S.C. § 217.  Under the FLSA, district courts have the jurisdiction to "restrain

violations" of the statute.  *Id.*   "Prospective injunctions are essential because the cost of

noncompliance is placed on the employer, which lessens the responsibility of the [DOL] in

investigating instances of noncompliance." *Martin v. Funtime, Inc.,* 963 F.2d 110, 114 (6th Cir.

1992) (internal citation omitted); *Solis,* 938 F. Supp. 2d at 404 (finding that a prospective

injunction was appropriate because the defendants willfully continued to violate the FLSA, after

being notified by DOL of their noncompliance)  "The imposition of an injunction is not punitive,

nor does it impose a hardship on the employer since it requires him to do what the Act requires

anyway — to comply with the law." *Id.* (citation and internal quotation marks omitted).

Generally, courts consider two factors in determining whether a prospective injunction

should be granted — the "previous conduct of the employer and the dependability of his

promises for future compliance."  *Solis,* 938 F. Supp. 2d at 404–05 (citing *Dunlop v. Davis,* 524

F.2d 1278, 1281 (5th Cir.1975)); *see also Brock v. Wackenhut Corp.,* 662 F.Supp. 1482, 1488

(S.D.N.Y.1987) (citing the *Dunlop* standard).  Here, the Secretary alleges that Defendants

willfully violated the FLSA.  Further, Defendants were less than fully cooperative with the WHD

during Stahl's investigation, namely, failing to produce requested documents and failing to

appear at scheduled conferences.  Because Defendants defaulted in the instant action, their

current and future compliance with the FLSA is in question. Thus, an injunction is necessary.

*See Solis,* 938 F. Supp. 2d at 404 (finding a prospective injunction necessary where defendants

willfully violated the FLSA after being notified by the Department of Labor of their non-

compliance).  Therefore, the Court finds that the factors weigh in favor of Plaintiff, and a

prospective injunction restraining Defendants from future violations of the overtime and

recordkeeping requirements of the FLSA is warranted.

The Court further notes that the Secretary seeks post-judgment interest as well as costs

associated with the instant proceeding.  However, the Plaintiff has not set forth any statutory or

case law support showing an entitlement to such interest, although Plaintiff may be so entitled.

Nor has Plaintiff provided any information with respect to the appropriate rate of interest if

entitlement to interest is established.  In addition, the Plaintiff has not delineated the costs for

which reimbursement is sought nor has any underlying documentation for those costs been

submitted.  *See generally* Compl.; Jacobs Decl.   This Court therefore respectfully recommends

to Judge Hurley that the entry of judgment be deferred to give Plaintiff the opportunity to

provide the foregoing information within 21 days.

## V.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends the following actions

to Judge Hurley:  (1) that Plaintiff's motion for entry of default judgment against the Defendants

be GRANTED; (2) that damages in the form of back wages be awarded to the Secretary in the

sum of  $77,610.75; (3) that liquidated damages in the sum of $77,610.75 be awarded to the Secretary; (4) that an injunction restraining Defendants from future violations of the overtime and recordkeeping requirements of the FLSA be imposed; and (5) that the entry of judgment be deferred to give Plaintiff the opportunity to provide the information concerning post-judgment interest and costs within 21 days.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first-class mail and to file proof of such service on ECF by March 15, 2019.**

**SO ORDERED.**

Dated: Central Islip, New York
        March 13, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge
